UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KIOR, INC.,  | ) | |
| | ) | |
| Plaintiff,  | ) | |
| | ) | |
| v.  | ) | CIVIL ACTION NO. 09-CV-30225-MAP |
| | ) | |
| GEORGE W. HUBER,  | ) | |
| | ) | |
| Defendant.  | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, STAY THIS ACTION DUE TO
A DUPLICATIVE STATE COURT PROCEEDING**

**INTRODUCTION**

Defendant George W. Huber ("Huber") submits this memorandum in support of his

Motion to Dismiss or, In the Alternative, Stay This Action Due to a Duplicative State Court

Proceeding.  Dismissal is appropriate under the abstention doctrine detailed in *Colorado River*

*Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  In the alternative, Huber moves

for a stay of this case pending the outcome of the duplicative state court proceedings.  Dismissal

is appropriate because the same parties and issues are before the Massachusetts Superior Court,

Business Litigation Section, in *KiOR, Inc., v. Huber, Anellotech, Inc., and University of*

*Massachusetts*, bearing Civil Action No. 2010-02664-BLS2 filed on July 1, 2010, thus making

them parallel actions suitable for dismissal or stay pursuant to the *Colorado River* doctrine. In

addition, the relevant factors under the *Colorado River* abstention doctrine support the granting

of a dismissal of this duplicative suit.  In the alternative, a stay of this matter should be ordered

pending resolution of the state court action.

498709.2

## FACTUAL BACKGROUND

This case involves a dispute over a contractual agreement between the parties and the resulting ownership of certain intellectual property rights in processes developed for the purpose of converting biomass to fuel. The parties dispute the scope of Professor Huber's contractual obligations to KiOR, Inc. At the heart of its claims, however, KiOR seeks relief that can only be granted in the State Court Action – a transfer of ownership in Huber's patent interests from Huber, Anellotech, Inc. ("Anellotech") and the University of Massachusetts ("UMass"), to KiOR.

### (a)     The Federal Action

Under diversity jurisdiction, KiOR filed the present federal action against Huber on December 17, 2009 (the "Federal Action"). The complaint arose out of Huber's consulting relationship with KiOR, under which he agreed to perform certain research for KiOR while maintaining the confidentiality of its trade secrets. The terms of the consulting relationship were set forth in the KiOR Consulting Agreement, which is attached to the Complaint as Exhibit A. Following the termination of the KiOR Consulting Agreement, Huber was listed as an inventor on patent applications filed by UMass with the United States Patent and Trademark Office. In the Federal Action, KiOR asserts Huber violated the non-compete and confidentiality provisions of the KiOR Consulting Agreement, along with the implied covenant of good faith and fair dealing. The Federal Action also asserted claims for fraud and deceit and a violation of California trade secret law.

The Court conducted a scheduling conference in the Federal Action on April 20, 2010. KiOR served document requests on Huber in this action on June 25, 2010. Huber provided his timely written responses and objections to these document requests on July 26, 2010. In conjunction with Huber's document responses, counsel for Huber indicated in the cover letter

498709.2

transmitting the responses that Huber intended to file a motion to dismiss or stay the Federal

Action pursuant to the *Colorado River* abstention doctrine and requested a Local Rule 7.1

conference to discuss said motion.  A copy of the July 26, 2010 letter is attached as Exhibit A.

Counsel for the parties conferred on July 29, 2010, to discuss the parallel actions and Huber's

motion to dismiss or stay.  The agreement reached is set forth in Exhibit B, a letter from KiOR's

counsel that same day: "KiOR is prepared to dismiss the D. Mass. Action without prejudice . . .

so long as Huber . . . and Anellotech agree to produce documents responsive to the Document

Requests as soon as practicable."  Professor Huber and Anellotech are prepared to produce

documents in the State Action, but KiOR has, nevertheless, refused to dismiss the this case.

    **(b)       The State Action**

KiOR filed a parallel action in the Massachusetts Superior Court on July 1, 2010, which

was accepted by the Business Law Section bearing Civil Action No. 2010-02664-BLS2 (the

"State Action").  A true and accurate copy of the State Action complaint is attached as Exhibit C.

The State Action asserts identical causes of action against Huber as the Federal Action.  In

addition to its claims against Huber, KiOR asserts claims in the State Action against additional

defendants, Anellotech and UMass.  With these new defendants, KiOR added claims alleging

Huber also breached his contractual obligations with KiOR's predecessor entity, BIOeCON, and

breached the consulting agreement provision requiring him to covey certain intellectual property

rights to KiOR.  These new allegations are coupled with complimentary allegations against

Anellotech and UMass, including claims for violations of Massachusetts trade secret law and

M.G.L. c. 93A.  Finally, the State Action seeks a declaratory judgment that KiOR, and not

Anellotech or UMass, is the owner of any intellectual property rights disclosed in the patent

applications at issue in both the Federal Action and the State Action.

498709.2

KiOR served document requests on Huber in the State Action on July 29, 2010, which were virtually identical to the document requests served on Huber in the Federal Action. Huber filed his answer to the State Action complaint on August 9, 2010 and provided timely responses and objections to the State Action document requests on August 30, 2010.

## ARGUMENT

This Court should dismiss or stay the instant action in the interests of judicial economy and consistency given the existence of the parallel State Action. The *Colorado River* abstention doctrine permits a district court to dismiss or stay an action when there is an ongoing parallel action in state court. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-821 (1976). The principles underlying this doctrine rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Id.* at 817; *see also United States v. Fairway Capital Corp.*, 483 F.3d 34, 40 (1st Cir. 2007). Here, KiOR's claims in both the Federal and State Actions are virtually identical. Indeed, the State Action incorporates each claim included in the Federal Action and includes a near verbatim recitation of the facts giving rise to the dispute. Each cause of action depends on traditional state law issues, primarily the scope of the contracts between the parties. "[I]t is 'well settled that a district court is under no compulsion to exercise its jurisdiction where the controversy may be settled more expeditiously in state court.'" *City of Springfield v. Comcast Cable Comm., Inc.*, 670 F. Supp. 2d 100, 106 (D. Mass. 2009) (Ponsor, J.) (quoting *Will v. Calverty Fire Ins. Co.*, 437 U.S. 655, 662-663 (1978)) (internal citations omitted). This is exactly the type of case the *Colorado River* doctrine was established to address, to avoid the possibility of duplicative litigation, tension, and controversy between the state and federal forums, hurried and pressured decision-making, expense and confusion.

498709.2

The First Circuit has established a non-exhaustive list of eight factors for the district court to balance in exercising its discretion to abstain under the *Colorado River* doctrine: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.  *City of Springfield*, 670 F. Supp. 2d at 107 (quoting *Fairway Capital*, 483 F.3d at 40).  These factors are to be weighed qualitatively, with the weight accorded any specific factor dependent upon the nature of the dispute before the court and the relevant facts.  *Colorado River*, 424 U.S. at 818-819.

### 1.   There Is No *Res* Involved So The First Factor Is Non-Determinative

Neither party is invoking the court's jurisdiction over *res*, therefore, this factor is neutral and non-determinative to the instant case.

### 2.   The Federal Forum Is Inconvenient So The Second Factor Favors Abstention

The State Action is in the Business Law Section of the Massachusetts Superior Court in Boston, while the Federal Action is pending in Springfield, Massachusetts.  Counsel for both KiOR and Huber are located in Boston.  Litigation expenses will be dramatically increased if the parties litigate this matter in Federal Court.  Asking Professor Huber to shoulder the financial burden of defending himself against the same allegations based on the same set of facts in two different jurisdictions at opposite ends of the state is the very definition of inconvenience.  *See, e.g.*, *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989) (holding that simultaneous litigation at different sides of state would inconvenience both parties).

### 3.   Abstention Is Appropriate Because Proceeding In Both Jurisdictions Would Result In Piecemeal Litigation

498709.2

Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.  The interests in avoiding piecemeal litigation "tips strongly" in favor of a dismissal or stay, where, as in this case, "there is clearly the chance of duplicative effort and conflicting results."  *Silvaco Data Systems, Inc. v. Technology Modeling Associates, Inc.*, 896 F. Supp. 973, 976 (N.D. Cal. 1995).  This factor is particularly relevant to this case because the core issue in both cases is the scope of the contractual agreement between Huber and KiOR, and the resulting ownership of the intellectual property at issue.  Here "there is the real possibility that the two courts might interpret the same standard [contractual] language differently," thereby "severely prejudicing the rights of one of the parties."  *Liberty Mutual Ins. Co. v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (affirming stay of federal action pending resolution of state court action); *Great American Ins. Co. v. Precision Products Corp.*, Civ. Act. No. 92-1083, 1992 U.S. App. LEXIS 28635 at *5 (1st Cir. Aug. 7, 1992) (affirming the grant of the insured's motion to dismiss the insurers' federal declaratory relief and tort damages action against the insured under *Colorado River* abstention doctrine)

If the state court decides the state law interpretation question first, there is the possibility this Court's decision would be rendered only advisory.  *See Fairway Capital*, 483 F.3d at 42. Because the State Action also seeks a declaratory judgment of the ownership interests of the intellectual property at issue – a determination that cannot be made in the Federal Action because the necessary parties to such a determination have not and cannot be added to the Federal Action – a prejudicial determination is even more likely.  *C.f. Wilton v. Seven Falls, Co.*, 515 U.S. 277, 286-287 (1995) (holding the district court has more discretion in dismissing or staying actions

6

involving declaratory judgments); *Indian Harbor Ins. Co. v. Republican Svcs.*, 2010 U.S. Dist. LEXIS 94338, *4-5 (N.D. Ill. Sept. 10, 2010).

Beyond creating an incentive to tactically push ahead or delay one action or the other for favorable rulings, however, there is also the danger in this case of conflicting discovery rulings. This case involves highly technical trade secrets and intellectual property rights.  By litigating the same claims in two jurisdictions, there is the potential of conflicting discovery orders, specifically regarding the disclosure of trade secrets, as well as highly burdensome, duplicative and costly discovery (including, notably, a decision to pursue motions to compel in either court depending on the whim of the party).  This Court can avoid the potential for unnecessarily burdensome and duplicative discovery and inconsistent determinations of the parties' rights and obligations by staying the instant matter to permit the Massachusetts court to interpret the contracts in the first instance.

### 4.   Both Cases Are In Essentially The Same Phase Of Litigation

The fourth factor looks not just at the order of filing, but how much progress has been made in each case.  *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 11 (1st Cir. 2003); *see also Colorado River*, 424 U.S. 800 (upholding dismissal even where federal action was filed before state action).  The actions were filed within only a few months of each other and KiOR served duplicative document requests on Huber in both actions to which Huber has provided responses.  In fact, even though the Federal Action was filed first, Huber has only served document requests on KiOR in the State Action so the State Action is slightly further along in the discovery process than the Federal Action.  *See Soni v. Boston Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 89 (D. Mass. 2009) ("[T]he fourth factor relating to the order of the lawsuits 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much

progress has been made in the two actions.'") (citations omitted).  At this time, both cases are in

the early stages of discovery.

     5.   **Issues Of State Law Control The Dispute Favoring Abstention**

The state law nature of the dispute between the parties strongly weighs in favor of

abstention.  Because "no federal issues are raised in the instant . . . action[,] . . . no federal

interest would be served by retaining jurisdiction over the case."  *Liberty Mutual Ins. Co.*, 751 F.

2d at 477 (holding stay of federal action warranted because there was  the real possibility that the

two courts might interpret the same standard contractual language differently); *see also Great*

*American Ins. Co.*, 1992 U.S. App. LEXIS 28635 at *6 (finding dismissal of federal case

appropriate because no federal interest would be served by retaining jurisdiction over the case).

Abstention here would acknowledge that the Federal Action is based solely on diversity and

requires the determination of state law questions regarding the proper interpretation of contracts

and the application of state trade secret and unfair business practices laws.

     6.   **The State Forum Better Protects The Parties' Interests.**

KiOR's claims are all based in state law.  The Massachusetts court is "fully competent,

indeed in a far better position, to adjudicate any and all claims of this sort."  *City of Springfield*,

670 F. Supp. 2d at 106.  Moreover, the Massachusetts action is the "more comprehensive of the

two" actions, *Liberty Mutual Ins. Co.*, 751 F. 2d at 477, because the state action joins all

necessary parties to the action and includes all claims against Defendants Huber, Anellotech, and

UMass. *See also Great American Ins. Co.*, 1992 U.S. App. LEXIS 28635 at *5; *Indian Harbor*

*Ins. Co.*, 2010 U.S. Dist. LEXIS 94338 at *7-8.  There can be no question of the adequacy of the

state court to provide complete relief to KiOR.  Indeed, KiOR can only receive complete relief in

the state court.  Joining Anellotech to the instant action would destroy diversity jurisdiction

498709.2

because Anellotech, like KiOR, is a Delaware Corporation.  Only the State Action includes a claim based on the contractual provision requiring Huber to convey intellectual property rights to KiOR and seeks a declaratory judgment of the parties' interests in the intellectual property.

Moreover, either action would impact the rights of UMass over its intellectual property ownership and its employee, Huber.  The state court in Massachusetts is uniquely situated to make state law rulings affecting the rights and obligations of its public institutions.  *Cf. City of Springfield*, 670 F. Supp. 2d at 106.  Furthermore, the State Action has been accepted by the Business Law Section of the Superior Court.  The Business Law Section accepts only a small percentage of cases in the Superior Court and was uniquely created to deal with complex business disputes, such as the dispute at issue in the instant case, and as such, it provides even greater protections and continuity for the parties.

Finally, here, even though the ownership rights to intellectual property is at issue, the dispute does not present a dispute over intellectual property rights conferring federal subject matter jurisdiction.  In this case, the Massachusetts court is well within the exercise of its general jurisdiction and can properly protect the interests of the parties to the litigation.  *See, e.g.*, *Silvaco Data Systems, Inc.*, 896 F. Supp. at 975-78 (staying federal action for false advertising and unfair competition pending resolution of parallel state court action for tortious interference, unfair competition, defamation and false light publicity); *Flip Side, Inc. v. Chicago Tribune Co.*, 1989 U.S. Dist. LEXIS 207 (N.D. Ill. 1989) (staying trademark infringement and libel action in deference to similar state court action charging libel, invasion of privacy and intentional infliction of emotional distress, even though state action did not assert trademark infringement); *Thompson v. Ashner*, 601 F. Supp. 471, 474-76 (N.D. Ill. 1985) (abstaining through stay of federal case asserting trademark infringement and unfair competition pending resolution of

498709.2

similar state court case); *Mars, Inc. v. Standard Brands, Inc.*, 386 F.Supp. 1201 (S.D.N.Y. 1974)

(staying federal trademark infringement and unfair competition case pending resolution of

similar state court action); *Puck v. WP Pacific, Inc.*, 2007 U.S. Dist. LEXIS 61932, *10-11 (C.D.

Cal. 2007) (abstaining through stay dispute over licensing agreements and unfair competition

because "the central legal issue" in that case was a "state law contract question").

### 7. The Continued Maintainance Of The Federal Action Is Vexatious And Contrived

The court should dismiss or stay the instant action to thwart KiOR's attempts to forum

shop.  KiOR initially chose to bring this action in federal court.  Upon changing counsel and

reconsidering its options, KiOR then brought the action in Massachusetts state court without

bothering to dismiss the Federal Action.  The federal claim is based only upon diversity

jurisdiction.  The instant action does not include all parties necessary to provide the relief KiOR

seeks because Anellotech and UMass are not named defendants.  Additionally, the Federal

Action does not include all the claims necessary for KiOR to obtain the real  relief it seeks –

transfer of the intellectual property interests – because there is no declaratory judgment request

or claim based upon the conveyance provision of the consulting agreement.  Instead, KiOR's

maintenance of the Federal Action merely burdens Huber and the judicial system by requiring

Huber and the courts to incur significant costs and expenses in each forum.  *See Villa Marina*

*Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529 (1st Cir. 1991) (affirming dismissal of federal

action under *Colorado River* because a substantially similar Commonwealth action existed along

with exceptional circumstances, such as vexatiousness).

Though there are no federal claims at issue, KiOR cannot receive complete relief from

the Federal Action, and the state court is the best forum to litigate its relief under state law, KiOR

wishes to obtain discovery more quickly by simultaneously pursuing both actions.  KiOR's

498709.2

attempt to split this controversy between the state and federal judiciaries has created precisely the kind of waste of judicial resources, inefficiency, and potential conflicting rulings that the *Colorado River* doctrine exists to remedy.   *See Colorado River*, 424 U.S. at 817; *see also Fairway Capital Corp.*, 483 F.3d at 40; *City of Springfield*, 670 F. Supp. 2d at 106.  This Court should dismiss or stay this action to conserve the resources of both the overburdened federal and state court systems.

**8.  The Eighth Factor Is Neutral Because Huber Did Not Bring The Federal Action And Kior Chose To Bring The State Action**

KiOR is the plaintiff in both the Federal and State Actions and chose both forums to litigate its claims.  The instant action was brought by the KiOR under diversity jurisdiction only. It is Huber who seeks this motion to dismiss or stay.  Therefore, this factor is non-determinative in deciding whether the Court should dismiss or stay the instant action.

## CONCLUSION

The Court should exercise its power under the *Colorado River* abstention doctrine and dismiss or stay the instant case.  "The doctrine of abstention provides a superior analytical tool, because it directly addresses the core problem here: the need to avoid overlapping decisional fora and to dispose of the issues raised by the parties in the most effective, efficient, and consistent manner."  *City of Springfield*, 670 F. Supp. 2d at 106.  For the foregoing reasons, this Court should grant George W. Huber's Motion to Dismiss or Stay.

498709.2

Respectfully submitted,

GEORGE W. HUBER

By his attorneys


/s/ Lee T. Gesmer
Lee T. Gesmer, BBO#
   lee.gesmer@gesmer.com
Joseph J. Laferrera, BBO#
   joe.laferrera@gesmer.com
Nancy M. Cremins, BBO#658932
   nancy.cremins@gesmer.com
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878

Dated: September 29, 2010

### Certificate of Electronic Filing

I hereby certify that on September 29, 2010, I electronically filed the foregoing with the

Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF

system.  I certify that all participants in the case are registered CM/ECT users and that service

will be accomplished by the CM/ECT system.


/s/ Lee T. Gesmer
Lee T. Gesmer

12

498709.2